UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                          Case Nos.:   3:08cr79/MCR/CJK
                                                         3:15cv176/MCR/CJK

MARK DANIEL LEITNER,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant Mark Daniel Leitner has filed an Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 1856). The Government filed a response in opposition, and Defendant filed a reply. (ECF Nos. 1890, 1893). Defendant's amended motion should be denied.

## BACKGROUND and ANALYSIS

In August of 2008, a grand jury returned an indictment charging Defendant with a dual object conspiracy to defraud the United States and to commit wire fraud in violation of 18 U.S.C. § 371 (count one); a separate conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (count two); and two counts of wire fraud in violation of 18 U.S.C. § 1343 (counts seven and fifteen). (ECF No. 3).

Twelve other individuals were also indicted on these and other counts.  On February 8, 2010, on the Government's motion, the court dismissed count two of the indictment against Defendant with prejudice.   The court also dismissed the substantive wire fraud counts against all but one of the defendants.  (*See* ECF Nos. 728, 819).  Defendant represented himself at trial after waiving his right to counsel at a hearing under *Faretta v. California*, 422 U.S. 806 (1975), and the court appointed stand-by counsel.  (ECF Nos. 607, 619, 633).  On March 31, 2010, after a month-long trial, the jury found Defendant guilty of one count of conspiracy to defraud the United States and to commit wire fraud.  (ECF No. 1166, 1167).  On August 7, 2010, the district court sentenced Defendant to 60 months' imprisonment, followed by three years of supervised release.  (*See* ECF Nos. 1319, 1320).  In an amended judgment, the court ordered no restitution against Defendant.  (ECF No. 1508).  The Eleventh Circuit Court of Appeals affirmed Defendant's conviction and sentence on direct appeal.  *United States v. Leitner*, No. 10-13826 (11th Cir. 2014) (per curiam) (ECF No. 1788).

General Standard of Review

   Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A

prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be

re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234-35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (*quoting Mill*s, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the petitioner establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for

procedural default, a petitioner must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [petitioner's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a constitutional claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the

performance prong if the defendant cannot meet the prejudice prong, or vice versa."). In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (*quoting Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315-16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be

unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

Regarding the prejudice requirement, a petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*quoting Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). A petitioner therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 369 (*quoting Strickland*, 466 U.S. at 687). To establish ineffective assistance, a petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the

*Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012).

The law is well-established that counsel is not ineffective for failing to preserve or argue a meritless claim. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (*citing Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)). This is true regardless of whether the issue is a trial or sentencing issue. *See, e.g.*, *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d

970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve

or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989)

(counsel was not ineffective for informed tactical decision not to make what he

believed was a meritless motion challenging juror selection procedures where such

a motion has never been sustained because such a motion would not have been

successful).

An evidentiary hearing is unnecessary when "the motion and files and records

conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b);

*Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).  Not every claim of

ineffective assistance of counsel warrants an evidentiary hearing.  *Gordon*, 518 F.3d

at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).  To be

entitled to a hearing, a petitioner must allege facts that, if true, would prove he is

entitled to relief.  *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir.

2015).  A hearing is not required on frivolous claims, conclusory allegations

unsupported by specifics, or contentions that are wholly unsupported by the record.

*See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014)

(explaining that "a district court need not hold a hearing if the allegations [in a § 2255

motion] are . . . based upon unsupported generalizations") (internal quotation marks

omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing. The undersigned finds that an evidentiary hearing is not warranted in this case.

Statement of Facts

This case involves the activities of Pinnacle Quest International ("PQI"), an organization that operated a marketplace for a variety of vendors, many of whom promised their schemes or products could eliminate one's income tax liability and credit card debt. Other vendors promised to hide assets from the Internal Revenue Service ("IRS") or other creditors. PQI marketed three membership levels: at the Q1 level, a member received a set of CDs containing recordings by various PQI vendors; at the Q2 level, members purchased a ticket for approximately $7,500 to attend an offshore conference where vendors made live presentations; and at the Q3 level, members purchased a ticket for approximately $18,750 to attend an offshore conference where additional information and speakers were available. Between 2003 and 2008, Defendant worked as a Qualified Consultant ("QC") for PQI, marketing tax and debt elimination schemes. He also used these products himself. The Government

presented evidence that Defendant did not file any federal income tax returns or pay any federal income tax during his involvement with PQI. (*See* ECF No. 1448 at 169).

The Government presented the testimony of undercover IRS agent Theresa Hampton who testified she began investigating PQI in June of 2003 by contacting a website, Net Tax Freedom, a site she later learned Defendant controlled. (ECF No. 1438 at 109). She received an email response from Defendant which stated in part:

> Hi, my name is Mark Leitner and I am a consultant for the educational organization PQI. We are for expert consultation, education and services in the areas of debt elimination, asset protection, and freedom and privacy. If you are looking to reduce or eliminate your income tax burden legally and immediately, then this is the information that can help you. Our education will blow your socks off and leave your toes smoking. And we have a money back guarantee to back up that statement.

(*Id*. at 111-12). The email continued:

> You may also be wished to be introduced to a few of the many people that have taken advantage of our services and who are now living a tax-free lifestyle, people like doctors, CPAs, attorneys, housewives, business executives, construction workers, nurses, and many other Americans just like you. We have helped tens of thousands. Our financial tools and processes are applicable to almost everyone. W-2 wage earners will be able to keep most of their paycheck in as soon as several weeks time. Our experts will handle all paperwork and correspondence for you.
>
> I am looking forward to speaking with you and hope to help you on your way to living completely income tax and debt free. You will find beyond a doubt that PQI's education services will elevate you above the vast majority of Americans in knowledge and financial freedoms. You

will have many advantages and opportunities that most Americans will never know about.

(*Id*. at 112-13).    Agent Hampton reviewed several websites recommended by Defendant and promoted by PQI.  Defendant also discussed with agent Hampton the IMF Decoder, originally called IRS Code Busters.   Leitner stated this system would result in her not having to pay any more taxes.  He explained the product as follows:

> He said that it was a tax elimination product.  They used a FOIA or Freedom of Information request that they send on your behalf.  It was a letter-writing campaign.  They prepared the letters, you sent them to the Internal Revenue Service, and you obtained your individual master file. Which he told me that had codes on them that shouldn't be there and needed to be removed.  That they would take the file.  I would mail it to them once I got it back.  They would take the file and decode it and make sure–have the IRS take off those codes.  It was a letter-writing campaign to have the codes removed and take you out of the tax system.

(*Id*. at 135).    Agent Hampton received daily emails from Defendant and had conversations with him which she recorded and were played for the jury.  One of Defendant's emails to Agent Hampton celebrating April 15, 2005, as "happy freedom day" stated in part:

> In case you don't already know, the IRS is a fraud, and the vast majority of Americans do not owe income taxes.  There is no law that requires it. In addition, our money paid for income taxes does not really go to pay for government services.  There are several ways to legally remove yourself from the clutches of the IRS and the burden of the lie/hoax of those taxes.

> In honor of April 15, which is just another day for me, I have posted
> below the attached different proofs of what I'm saying, along with ways
> to research getting out of paying fraudulent income taxes and keeping
> that hard-earned money for yourself.

(ECF No. 1439 at 66-67).  Agent Hampton purchased a Q1 membership from

Defendant for $1,280.  (ECF No. 1438 at 145).  She later learned that $1,000 of her

membership fee went to Defendant.  (*Id*. at 156).  After being introduced to various

PQI vendors, Agent Hampton purchased a Q2 membership through Defendant and

attended two offshore conferences.

The Government also presented the testimony of Andrew Cordova, who

became involved with PQI in 2002 after being introduced to Defendant.  (ECF No.

1444 at 236).  Defendant explained PQI to Cordova as "an education institute type

of thing" and that PQI's vendors "were people that had been looked at, checked out

by PQI, basically had been approved by this PQI organization."  (*Id*. at 237).  During

their first meeting, Defendant "mentioned that he wasn't paying taxes."  (*Id*. at 238).

Cordova testified, "Mark [Leitner] introduced me, sold me the Q2 package, sold me

on PQI being a viable entity and a good thing to be interested in."  (*Id*. at 266).

Cordova and his wife joined PQI at the Q2 level in order to attend a conference in

Cancun, Mexico.   (*Id*. at 241).

Cordova testified that the IMF Decoder vendor marketed the product as a way to remove oneself from the tax system with the end result being that he would no longer be liable to pay any taxes to the IRS. (*Id*. at 247). Cordova explained that IMF Decoder's "representation seemed to be that this was all a logical flow and that the IRS would have to go along with it because basically, that's the basis of the IRS. And this is a means of challenging how they originally got you involved in paying taxes in the first place." (*Id*. at 248-49). He testified that he purchased and used the IMF Decoder product and did not file income tax returns for approximately two to three years, from 2003 to 2005. (*Id*. at 252). He also testified that he followed all of IMF Decoder's instructions "to a T" with the end result being that, "I had to declare bankruptcy a couple of years ago. I pay almost–a little more than $2,000 a month to the IRS for probably another 2 ½ years. That's the final result." (*Id*. at 253). He was also assessed penalties and interest for non-filing. Cordova testified that he left PQI:

> . . . about a year after I had joined PQI when I started getting the doubts like this is probably not working correctly.
> The investment side, by then, had fallen through. I had already lost $100,000 just on the investment side. That was obvious that–in fact, I think what probably wanted me–or the reason I decided to leave PQI is after that, I had asked Mr. Leitner to look into this, and he said, oh, yeah, he would talk to the leadership group again, and I never heard from Mark again.

(*Id*. at 254).

Defendant's Claims

I.      Ground One–Failure to Sever

In his first ground for relief Defendant claims that the district court's failure to sever his prosecution from his co-defendants violated his due process rights.  (ECF No. 1856 at 16-18).  In December of 2009, Defendant filed a motion to sever, relying on Admiralty law under 28 U.S.C. § 1333.  (ECF No. 683).  The court denied the motion, noting that Title 18 and the Federal Rules of Criminal Procedure governed Defendant's case.  (ECF No. 688).

In the Eleventh Circuit, the general rule "is that defendants who are jointly indicted should be tried together, and this rule has been held to be particularly applicable to conspiracy cases."  *United States v. Castillo-Valencia*, 917 F.2d 494, 499 (11th Cir. 1990).   A district court should "balance the right of the defendants to a fair trial against the interests of judicial economy and efficiency."  *Id*.  A severance should be granted only "if there is a serious risk that a joint trial would prejudice a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see also* Fed. R. Crim. P. 14.  "In this circuit, to compel severance the defenses must be more than merely antagonistic-they must be antagonistic to the point

of being mutually exclusive or irreconcilable." *United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir., Unit B 1981) (citations omitted).[1]  It is not enough that co-defendants have conflicting defenses, and "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540.

 In his amended motion, Defendant does not address in what way or ways  his defense and the defenses of his co-defendants were antagonistic, much less antagonistic to the point of being mutually exclusive or irreconcilable.  Defendant has not demonstrated that he suffered prejudice or received an unfair trial because the court did not grant his motion to sever.  Defendant's claim is without merit.

The Government also asserts that Defendant could have, but failed, to raise this claim on direct appeal, so it is procedurally barred.  *See Lynn*, 365 F.3d at 1234. Defendant asserts that he failed to raise this claim due to ineffective assistance of appellate counsel.  (*See* ECF No. 1856 at 4).  Defendant does not provide any facts or legal argument to support his contention that his appellate counsel rendered ineffective assistance in failing to raise this claim on appeal.  He has also failed to demonstrate that he would have prevailed had this issue been raised on appeal.

---

[1] Unit B decisions of the former Fifth Circuit rendered after September 30, 1981 are binding precedent in this circuit.  *Stein v. Reynolds Securities, Inc*., 667 F.2d 33, 34 (11th Cir. 1982).

Case Nos.: 3:08cr79/MCR/CJK; 3:15cv176/MCR/CJK

Appellate counsel is not ineffective for failing to raise a meritless issue on appeal. *See Shere v. Sec'y, Fla. Dep't. of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008). Defendant's assertion, without more, is not sufficient to overcome the procedural bar with respect to this ground. Ground one is both procedurally barred and without merit.

II.     Ground Two–Failure to Respond to Affidavit

In his second ground Defendant argues he filed an Affidavit of Specific Negative Averment dated December 23, 2009, to which the Government failed to respond. (ECF No. 1856 at 18; *see* Affidavit, ECF No. 1856 at 71-86). He argues failure to respond means the Government acquiesced to it.

The record indicates Defendant filed this affidavit and several other affidavits which were returned to him without filing. The court specifically found the Affidavit of Specific Negative Averment to be irrelevant. (*See* ECF No. 713). Defendant resubmitted this affidavit and other pleadings which the court addressed as follows:

> The court will not commit its resources to review the resubmitted documents previously deemed irrelevant to this case, nor will the court require the clerk to expend time to scan and post such documents to the court's electronic record. In the court's order of January 11, 2010, defendant was advised that further documents submitted for filing which are found to "have no merit or legitimate bearing with regard to this criminal matter, or which otherwise do not comply with the procedural or substantive rules of this court" would be returned without filing.

Defendant's noticed rejection of this court's order does not persuade the court to do otherwise. Accordingly, the recently submitted documents described herein shall be returned without filing.

(ECF No. 775 at 1-2) (footnotes omitted).

The Government had no obligation to respond to a document not even filed in the case. Defendant's claim is without merit. The Government also asserts Defendant could have, but failed, to raise this claim on direct appeal, so it is procedurally barred. *See Lynn*, 365 F.3d at 1234. To the extent Defendant asserts ineffective assistance of appellate counsel to excuse his procedural default, he does not provide any facts or legal argument to support his contention. Defendant has also failed to demonstrate he would have prevailed had this issue been raised on appeal. *See Shere*, 537 F.3d at 1311. Ground two is both procedurally barred and without merit.

III.    Ground Three–Failure to Attach an Oath to Warrant

In his third ground Defendant argues that "[n]o lawful bona fide Warrant was issued, executed, nor accompanied the alleged indictment against accused in violation of due process," so the court had no personal jurisdiction over him or over the subject matter of the case. (ECF No. 1856 at 19). The record reflects Defendant filed several motions to strike the warrant based on the lack of an oath or affirmation supporting

its issuance. (ECF Nos. 473, 616, 691). The court denied these motions. (ECF Nos. 491, 617, 695).

On August 21, 2008, a grand jury indicted Defendant and his co-conspirators for various crimes. (ECF No. 3). The court issued sealed arrest warrants on August 22, 2008. (*See* ECF No. 18). An indictment constitutes a finding of probable cause sufficient to issue an arrest warrant. *See Giordenello v. United States*, 357 U.S. 480, 487 (1958) ("A warrant of arrest can be based upon an indictment because the grand jury's determination that probable cause existed for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person so charged."); *see Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977) ("it has long been settled that an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides the authority for an arrest warrant to issue.").[2] Defendant's arrest followed his indictment by a grand jury. Defendant's claim that the warrant did not comport with due process is without merit.

The Government also asserts that Defendant could have, but failed, to raise this claim on direct appeal, so it is procedurally barred. *See Lynn*, 365 F.3d at 1234.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

To the extent Defendant asserts ineffective assistance of appellate counsel to excuse his procedural default, he does not provide any facts or legal argument to support his contention. Defendant has also failed to demonstrate he would have prevailed had this issue been raised on appeal. *See Shere*, 537 F.3d at 1311. Ground three is both procedurally barred and without merit.

IV.     Ground Four–Actual Innocence

In his fourth ground Defendant claims that he is actually innocent and the Government failed to prove the elements of the crimes charged. (ECF No. 1856 at 21). Specifically Defendant argues that he "believed what he marketed to be correct and lawful," and that he was not aware of any "criminal conspiracy to sell fraudulent products or impede the IRS." (*Id*. at 22).

In his direct appeal Defendant raised the issue of whether the Government presented sufficient evidence for the jury to convict him of the conspiracy charge. (*See* ECF No. 1890, Exh. 1 at 44-59). The Eleventh Circuit rejected this claim, finding "there was extensive evidence to support defendant Leitner's conviction for knowingly and voluntarily joining and participating in the dual object conspiracy to defraud the United States by impeding the government's assessment and collection of taxes and to commit wire fraud by defrauding PQI's customers." (ECF No. 1788

at 14). The court noted that evidence presented at trial refuted Defendant's assertion

that he did not intend to defraud the United States because he thought the products

he sold were legal. As to conspiracy to defraud by impeding the IRS, the appeals

court stated:

> Evidence showed that Leitner sent emails to prospective PQI customers,
> such as Agent Hampton and Cordova, filled with statements about the
> illegality of the IRS. Although Leitner now argues that he honestly
> believed the truthfulness of his assertions, this argument is specious at
> best.
>
> The evidence also proved that the speakers at PQI conferences
> advocated for defiance of tax laws. Leitner required that Agent
> Hampton sign a confidentiality agreement before Agent Hampton
> attended a PQI conference. A reasonable jury could infer that Leitner
> knew that the conference speakers advocated illegal activity, and
> insisted that Hampton sign the confidentiality agreement so as to prevent
> law enforcement from learning about the agendas of these conferences.
> There was also ample evidence that Leitner committed at least two overt
> acts in furtherance of the conspiracy to defraud the United States–he
> recruited individuals like Agent Hampton and Cordova to purchase PQI
> memberships and then avoid tax liability; and he personally failed to pay
> taxes for at least nine years.
>
> * * *
>
> Viewing the evidence in the light most favorable to the government, the
> evidence showed that Leitner participated in a scheme to defraud PQI
> customers by keeping from customers the fact that PQI memberships
> were essentially worthless. Ample evidence showed that Leitner and his
> co-defendants knew that the PQI vendors' products did not work.
> Nevertheless, the conspirators charged high rates for the right to
> purchase those ineffective products. A reasonable jury could thus infer,

then, that the conspirators sold these memberships without disclosing the uselessness of the PQI vendors' products in order to deceive the customers out of money.

* * *

A reasonable jury could also infer that Leitner knew that the PQI vendors' products did not work from Cordova's testimony that he (Cordova) told Leitner about his substantial financial losses as a result of using a PQI vendor product, that Leitner promised to investigate, and then promptly stopped communicating with Cordova. Cordova indicated that this occurred sometime in 2003. However, Agent Hampton testified that between 2003 and 2005, Leitner made numerous sales pitches to her and promises about the value of PQI memberships. A reasonable jury could conclude from this evidence that Leitner encouraged Agent Hampton to buy a PQI membership and use PQI vendors' products knowing that at least one PQI member, Cordova, had lost $100,000 as a result of those products.

As to the wire fraud conspiracy, the Eleventh Circuit stated:

On the use of interstate wires element, the government introduced numerous emails that Leitner wrote and sent to individuals in other states to further the conspiracy's fraudulent scheme. The government also introduced evidence of traditional wire transfers of cash made by Leitner's co-conspirators in furtherance of the conspiracy. Thus, this element was satisfied too.

(ECF No. 1788 at 11-14).

Because Defendant raised this claim on direct appeal, it will not be reconsidered on collateral review. *See Nyhuis*, 211 F.3d at 1343 ("The district court is not required to reconsider claims of error that were raised and disposed of on direct

appeal."); *Rozier*, 701 F.3d at 684 ("At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding."); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).

To the extent Defendant is arguing his factual innocence was not raised on direct appeal, (*see* ECF No. 1893 at 3-4), he has failed to make even a bare showing of actual innocence to overcome any procedural bar.  In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court held that a prisoner filing a first-time federal habeas petition could overcome the one-year statute of limitations in section 2244(d)(1) upon a showing of "actual innocence" under the standard announced in *Schlup v. Delo*, 513 U.S. 298 (1995).  In *McQiuggin*, the Court cautioned that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 133 S. Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329). *See also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).  The test devised in *Schlup* is intended to "ensure[ ] that [the] petitioner's case is truly extraordinary, while still providing

petitioner a meaningful avenue by which to avoid a manifest injustice." *Schlup*, 513 U.S. at 327 (internal quotation marks and citation omitted). "To be credible" a gateway claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. In *House*, the Court also explained the gateway actual-innocence standard is not equivalent to the standard of *Jackson v. Virginia*, 443 U.S. 307 (1979), which governs claims of insufficient evidence. *House*, 547 U.S. at 538 ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict.").

Defendant has not presented any newly discovered evidence demonstrating actual innocence. He merely reiterates arguments made on direct appeal that he marketed PQI products, used them himself and did not believe PQI's products or tax strategies were illegal. (*See* ECF No. 1856 at 41-47). He states, "the facts in record reveal truth that I never knowingly or willfully conspired here, nor commit overt acts to further an alleged agreement for an unlawful purpose, which never existed. If one did, I was not aware and obviously did not participate." (*Id*. at 46). Defendant is making a sufficiency of the evidence claim. The Supreme Court has stated, "'actual

innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also McKay v. United States*, 657 F.3d 1190, 1197-98 (11th Cir. 2011). Defendant's repeated pronouncements of his innocence do nothing to move the bar.

To the extent Defendant is raising a claim that his appellate counsel rendered ineffective assistance in presenting and arguing this claim on appeal, this claim is without merit. The court appointed Gwendolyn Spivey to file a direct appeal on his behalf. (*See* ECF Nos. 1745, 1747). The Initial Brief, some seventy pages in length, raised two claims, including the claim Defendant raises in this ground. (*See* ECF No. 1890, Exhibit 1). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that enunciated in *Strickland*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). The Supreme Court has held that counsel need not raise every nonfrivolous claim on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983). The Court in *Jones* emphasized the importance of winnowing out weaker arguments in favor of stronger ones. The Court stated:

> 'Most cases present only one, two, or three significant questions . . . . Usually, . . . if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention. The effect of adding weaker arguments will be to dilute the force of the stronger ones.' (Citing R. Stern, Appellate

Practice in the United States 266 (1981)).

*Id.*, 463 U.S. at 752. The Court has also stated that while it is possible to bring a *Strickland* claim based on appellate counsel's failure to raise a particular claim in a merits brief, it will be difficult to demonstrate incompetence. *See Robbins*, 528 U.S. at 288. "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (citation omitted). To demonstrate prejudice, a defendant must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, he would have prevailed on appeal. *See id.*, 528 U.S. at 285. If an omitted claim would have had a reasonable probability of success on appeal, then counsel's performance necessarily resulted in prejudice. *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir.1991).

Defendant's appellate counsel argued Defendant believed his actions were legal and did not participate in the alleged conspiracy, and the Eleventh Circuit rejected the claim, citing extensively from the trial record. Defendant has failed to demonstrate how appellate counsel's arguments were deficient or what other arguments she could have made. Appellate counsel's performance did not fall below an objective standard, and Defendant has failed to establish prejudice, given the

substantial evidence of his guilt.  Ground four is denied.

V.    Ground Five–Failure to Testify at Grand Jury & False Statements Made
to Grand Jury

In his fifth ground, Defendant argues his due process rights were violated when the prosecutors did not allow him to testify before the grand jury.  (ECF No. 1856 at 23).  His argument is without merit because a target of a grand jury has no constitutional right to testify or to present a defense before the grand jury.  *United States v. Pabian*, 704 F.2d 1533, 1538-39 (11th Cir. 1983); *United States v. Leverage Funding Systems, Inc*., 637 F.2d 645, 648 (9th Cir.1980), *cert. denied*, 452 U.S. 961 (1981); *United States v. Gardner*, 516 F.2d 334, 339 (7th Cir.), *cert. denied*, 423 U.S. 861 (1975).

Defendant also argues the prosecution "provided a known false statement" in obtaining the indictment.  (ECF No. 1856 at 23).  Specifically, Defendant argues the prosecution falsely stated to the grand jury that in December of 2003, Defendant "conducted a Q2 conference in Cancun Mexico." (*Id*. at 48).  The record reflects that the Government presented evidence that Defendant recruited people to attend Q2 conferences and facilitated the participants' signing of confidentiality agreements prior to attending.  Agent Hampton testified that Defendant had her sign a "non-disclosure and non-circumvention" agreement which stated in part:

> The purchaser understands and agrees that all conference information and speaker contacts are for attendees only. . . . The purchaser agrees not to disclose to any person who is not in attendance at this conference–at this event, any conference information or speaker contacts.  Any person in breach of this shall be subject to remedy by all causes of action, including, but not limited to the exclusion from any future Q2 event. This shall be in effect for a period of five years.

(ECF No. 1439 at 8).  Agent Hampton discussed this agreement with Defendant who explained the need for this policy as "[j]ust that you didn't want to talk about this with people who were not like-minded like ourselves because they wouldn't understand."  (*Id*. at 9).  In addressing Defendant's argument that he did not intend to defraud the IRS, the Eleventh Circuit stated:

> The evidence also proved that the speakers at PQI conferences advocated for defiance of tax laws.  Leitner required that Agent Hampton sign a confidentiality agreement before Agent Hampton attended a PQI conference.  A reasonable jury could infer that Leitner knew that the conference speakers advocated illegal activity, and insisted that Hampton sign the confidentiality agreement so as to prevent law enforcement from learning about the agendas of these conferences.

(ECF No. 1788 at 11).

The Government also asserts that Defendant could have, but failed, to raise this claim on direct appeal, so it is procedurally barred.  *See Lynn*, 365 F.3d at 1234.  To the extent Defendant asserts ineffective assistance of appellate counsel to excuse his procedural default, he does not provide any facts or legal argument to support his

contention.  Defendant has also failed to demonstrate he would have prevailed had this issue been raised on appeal.  *See Shere*, 537 F.3d at 1311.  Ground five is both procedurally barred and without merit.

     VI.    Ground Six–Failure of Court to Recuse

In his sixth ground Defendant claims the trial judge, Judge M. Casey Rodgers, improperly failed to recuse herself from the case.  (ECF No. 1856 at 24).  In December of 2009, Defendant filed a motion for recusal based on an alleged conflict of interest due to a civil suit he filed against Judge Rodgers and others in the Superior Court of the District of Columbia which he claims created the appearance of bias and prejudice.  *See Leitner v. United States, Eric Holder, Tiffany Eggers, Michael Watling, Thomas Kirwin, William McCool, M.C. Rodgers*, 2009CA8502 (D.C. Super. Ct. 2009); (ECF No. 660).  The court denied the motion for recusal, finding no legitimate basis for recusal existed.  (ECF No. 671).

A judge is required to recusal himself "in any proceeding in which his impartiality might reasonably be questioned."  Title 28 U.S.C. § 455(a).  "The standard under § 455 is objective and requires the court to ask 'whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's

impartiality.'" *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir.1990) (citation omitted). An allegation of bias under section 455 "must demonstrate that the alleged bias is personal as opposed to judicial in nature." *United States v. Meester*, 762 F.2d 867, 884-85 (11th Cir.1985). A petitioner must point out personal, extrajudicial bias. "Unless a defendant can show pervasive bias, 'a judge's rulings in the same or a related case are not a sufficient basis for recusal.'" *United States v. Ramdeo*, 705 F. App'x 839, 841 (11th Cir. 2017) (*quoting Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Judges are not required to recuse themselves merely because they are named as defendants in a meritless lawsuit. *See Jones v. City of Buffalo*, 867 F.Supp. 1155, 1162-63 (W.D.N.Y. 1994); *see also Rafferty v. NYNEX Corp.*, 60 F.3d 844, 848 n. 4 (D.C.Cir. 1995), or merely because they have been personally attacked by the defendant in other proceedings. *United States v. Olander*, 584 F.2d 876, 887-88 (9th Cir.1978), *vacated on other grounds*, 443 U.S. 914 (1979); United States v. Bray, 546 F.2d 851, 858 (10th Cir.1976); *United States v. Marshall*, 77 F. Supp. 2d 764 (N.D. Tex. 1999). "A party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against him . . . ." 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3542, at 577-78 (2d ed. 1984).

Defendant has not demonstrated any legitimate basis sufficient to have required Judge Rodgers to recuse herself.  He cannot construct a motion to recuse on a baseless lawsuit which he filed.  In his reply, Defendant states Judge Rodgers "had a personal and financial interest in the outcome of the proceedings," yet, beyond the baseless allegation,  he does not offer any evidence to support this statement.  (*See* ECF No. 1893 at 4).  Because Defendant has not offered any factual evidence of personal bias to cause an objective lay observer to question the court's impartiality in this case, his claim is without merit.

The Government also asserts Defendant could have, but failed, to raise this claim on direct appeal, so it is procedurally barred.  *See Lynn*, 365 F.3d at 1234.  To the extent Defendant asserts ineffective assistance of appellate counsel to excuse his procedural default, he does not provide any facts or legal argument to support his contention.  Defendant has also failed to demonstrate he would have prevailed had this issue been raised on appeal.  *See Shere*, 537 F.3d at 1311.  Ground six is both procedurally barred and without merit.

VII.   Ground Seven–Failure to Properly Allege Each Element of Charged Offense

In his seventh ground Defendant argues "[t]he indictment was jurisdictionally defective as it failed to allege each and every element of the offense charged."  (ECF

No. 1856 at 25). Defendant also claims the IRS is not an agency of the United States and that he never "conducted" a seminar with his co-defendants. (*Id*. at 26-27).

The Eleventh Circuit has instructed that when analyzing a sufficiency of the indictment challenge, a court should "give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations." *United States v. McGarity*, 669 F.3d 1218, 1235 (11th Cir. 2012) (*quoting United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003) (quotation marks omitted)). The court explained that a common sense construction is satisfied through consideration of three factors: "whether the indictment 1) presents the essential elements of the charged offense, 2) notifies the accused of the charges to be defended against, and 3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *McGarity*, 669 F.3d at 1235 (quotation marks and citation omitted); *see also United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983) ("To pass constitutional muster, an indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecutions for the same offense.").

In Defendant's case the original and corrected indictment charged that Defendant and his co-conspirators "did knowingly and willfully combine, conspire, confederate and agree together and with other persons to: defraud the Internal Revenue Service, an agency of the United States, by dishonest and deceitful means, by attempting to impede, impair, obstruct and defeat the lawful government functions of the Internal Revenue Service in the ascertainment, computation, assessment and collection of income tax. . . ." (*See* ECF No. 3 at 6-7; ECF No. 728-1 at 6). Title 18 U.S.C. § 371 states in pertinent part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both." *See United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998) ("If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge."). The indictment in this case cited 18 U.S.C. § 371 and listed every element of the crime charged, including the manner and means by which the conspiracy was carried out. (*See* original indictment, ECF No. 3 at 23 & section C ¶¶ 2, 3, 5, 6, 9; corrected indictment, ECF No. 728-1 at 20 & section C,

¶¶ 2, 3, 5, 6, 9). The indictment also listed the specific overt acts taken by Defendant in furtherance of the charged conspiracy. (*See* ECF No. 728-1, section D, ¶¶ 6, 16, 17, 19, 21, 41). Defendant's assertion that his indictment did not allege the elements of the offenses charged is without merit.

The Government also asserts Defendant could have, but failed, to raise this claim on direct appeal, so it is procedurally barred. *See Lynn*, 365 F.3d at 1234. To the extent Defendant asserts ineffective assistance of appellate counsel to excuse his procedural default, he does not provide any facts or legal argument to support his contention. Defendant has also failed to demonstrate he would have prevailed had this issue been raised on appeal. *See Shere*, 537 F.3d at 1311. Ground seven is both procedurally barred and without merit.

## VIII.   Ground Eight–Use of Intended Loss Instead of Actual Loss for Sentencing

In his eighth ground Defendant claims his sentence violated fair sentencing acts and the court did not have the jurisdiction to sentence him using intended loss instead of actual loss. (ECF No. 1856 at 28). The record reflects that at the defendants' sentencing hearing, the court stated that, "the loss amount or loss calculation in this case is based on the intended loss and that is, or does stem from the representations made in the Q1 materials that were marketed to the public and that the PQI customers

purchased and that is the full amount of the sales receipts, so–as well as the statements that were made during the presentations at the Q2s and Q3s as well. That was the intended loss in connection with the conspiracy." (ECF No. 1617 at 7).

When calculating the amount of loss under § 2B1.1(b)(1), the applicable amount of loss is the greater of the actual loss, meaning the reasonably foreseeable pecuniary harm resulting from the offense, or the intended loss, which is the pecuniary harm that was intended to result from the offense. *See* U.S.S.G. § 2B1.1(b)(1) cmt. n. 3(A)(I) & (ii); *see also United States v. Nosrati-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001) ("If the intended loss due to the offense is greater than the loss actually caused, the court may use the amount of the intended loss for sentencing purposes."). The loss calculation does not have to be made with precision, "the figure need only be a reasonable estimate given the information available to the government." *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999). District courts "may hold all participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *United States v. Dabbs*, 134 F.3d 1071, 1082 (11th Cir. 1998). Given the law governing loss calculations in sentencing, Defendant's claim is without merit.

The Government also correctly asserts Defendant could have, but failed, to raise this claim on direct appeal, so it is procedurally barred. *See Lynn*, 365 F.3d at 1234. To the extent Defendant asserts ineffective assistance of appellate counsel to excuse his procedural default, he does not provide any facts or legal argument to support his contention. Defendant has also failed to demonstrate he would have prevailed had this issue been raised on appeal. *See Shere*, 537 F.3d at 1311. In any event, because Defendant has served the custodial portion of his sentence, this ground is moot and he is not entitled to any relief.

IX.    Ground Nine–No Personal Jurisdiction

In his ninth ground, Defendant claims the court did not have personal jurisdiction over him. (ECF No. 1856 at 30). Defendant's argument is without merit. Defendant's appellate brief admitted the court had subject matter jurisdiction over the case under 18 U.S.C. § 3231. (*See* ECF No. 1890, Exh. 1 at 15). A grand jury indicted Defendant for a violation of federal law which occurred in part in the Northern District of Florida, where PQI was headquartered. (*See* ECF No. 3). The court had both personal and subject matter jurisdiction in the case. *See United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003) ("A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment

charging a violation of federal law."); *see gen., United States v. Alvarez-Machain*, 504 U.S. 655, 659-70 (1992).

The Government also asserts Defendant could have, but failed, to raise this claim on direct appeal, so it is procedurally barred. *See Lynn*, 365 F.3d at 1234. To the extent Defendant asserts ineffective assistance of appellate counsel to excuse his procedural default, he does not provide any facts or legal argument to support his contention. Defendant has also failed to demonstrate he would have prevailed had this issue been raised on appeal. *See Shere*, 537 F.3d at 1311. Ground nine is both procedurally barred and without merit.

X.      Ground Ten–Ineffective Assistance of Appellate Counsel

In this last claim, Defendant alleges his appellate counsel rendered constitutionally ineffective assistance in his direct appeal. (ECF No. 1856 at 31). Defendant alleges his appellate counsel failed to raise the issues which he sets out in grounds one through nine of his amended motion. As discussed above, Defendant has failed to demonstrate ineffective assistance with regard to any of these claims.

Defendant also alleges his counsel failed to raise a claim of prosecutorial misconduct in his appeal. Defendant does not elaborate on this claim nor cite any example of prosecutorial conduct to support this assertion. Finally, Defendant

complains appellate counsel failed to properly communicate with him, corresponding with him primarily through written correspondence.   In his amended motion, Defendant's complaint appears to center on the method of communication, he does not allege appellate counsel failed to communicate with him or abandoned him in any way.     In his reply, he claims appellate counsel failed to provide effective communication and showed hostility to the issues he wished to raise on appeal. Correspondence from appellate counsel attached to Defendant's reply refutes these allegations.  (*See* ECF No. 1893 at 29-32).  As noted above, appellate counsel filed a seventy page brief and a reply brief.  Defendant has not demonstrated deficient performance or any resulting prejudice, that but for appellate counsel's performance, the outcome would have been different.  Ground ten is denied.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing § 2255 Proceedings provides "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), § 2255 Rules.

Case Nos.: 3:08cr79/MCR/CJK; 3:15cv176/MCR/CJK

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.  Defendant Mark Leitner's amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (ECF No. 1856) be **DENIED**.

2.     A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 11th day of July, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**



Case Nos.: 3:08cr79/MCR/CJK; 3:15cv176/MCR/CJK

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.